

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-24-2002

# Ryan v. Asbestos Workers

Precedential or Non-Precedential:

Docket 0-2813

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Ryan v. Asbestos Workers" (2002). *2002 Decisions.* Paper 41.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/41

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 00-2813 & 00-2891


JOHN V. RYAN


Appellant (No. 00-2891)


v.


ASBESTOS WORKERS UNION LOCAL 42 PENSION FUN; ASBESTOS
WORKERS UNION LOCAL 42 PENSION PLAN; TRUSTEES OF PENSION
PLAN, as Plan Administrator of Local 42 Pension Plan,


Appellants (No. 00-2813)



Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 97-cv-00604)
District Judge: Honorable Gregory M. Sleet



Argued November 26, 2001

Before: ROTH, FUENTES and WEIS, Circuit Judges

(Filed January 24, 2002)

John M. Stull, Esquire (Argued)
John V. Ryan, Jr., Esquire
    Attorney for Cross-Appellant
1300 N. Market Street, Suite 700
P.O. Box 1947
Wilmington, DE 19899

    Attorneys for Appellee/Cross Appellant

Francis J. Trzuskowski, Esquire (Argued)
William L. Doerler, Esquire
1020 Bancroft Parkway
P.O. Box 429
Wilmington, DE 19899-0429

    Attorneys for Appellants/Cross Appellees

OPINION


ROTH, Circuit Judge:

Defendants Asbestos Workers Union Local 42 Pension Fund, Asbestos Workers
Union Local 42 Pension Plan (Plan), and the trustees of the Plan (Trustees) appeal the
District Court's grant of summary judgment in favor of plaintiff John V. Ryan, Jr.
Defendants challenge the District Court's conclusion that they violated 204(g) of the
Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1001 et seq.,
by impermissibly reducing Ryan's accrued benefits. On cross-appeal, Ryan challenges
the District Court's refusal to award attorney's fees pursuant to ERISA 502(g)(1). For
the reasons stated below, we will affirm the District Court's order granting summary
judgment to Ryan. We will, however, vacate the District Court's order, denying
attorney's fees, and remand this case to the District Court for further consideration of the
fee application.

## I. Facts

Ryan is a former member of Asbestos Workers Union Local 42 and a participant in
the Local's Pension Plan. The Plan entitles Ryan to receive fixed, periodic pension
payments in an amount based upon his Credited Service. The first page of the Summary
Plan Description (SPD) states that the Plan provides each participant with "[n]ormal
retirement at age 65 if you have less than 25 years of Credited Service and have reached
the 5th anniversary date of your participation in the Plan, or at any earlier age that you
have 25 years of Credited Service." At page nine, the SPD states that "[i]f you are a
participant and have reached your Normal Retirement Date, you may retire and become
eligible for a normal retirement pension." "Normal Retirement Date" is defined on page 8
of the SPD as "the date you complete 25 years of Credited Service."

Between 1955 and 1996, Ryan worked in the trade as a member of Local 42 for
two different periods. During these periods of employment, he earned a total of 25 years
of Credited Service. Ryan earned 14 years of Credited Service between 1955 and 1969,

and 11 years of Credited Service from 1984 until his retirement in 1996. Between 1970 and 1983, Ryan worked outside the trade and thus experienced a 13 year "break in service."  (In 1983, Ryan returned to work in the trade but did not work long enough to earn any Credited Service during that year.)

Prior to 1983, plan participants could join periods of service for the purpose of pension benefits if the period of service before the break-in-service exceeded the period of the break-in-service.  Pursuant to this arrangement, Ryan for example could join a second period of service to his initial 1955-69 period of service if his break-in-service did not exceed 14 years.

In 1983, however, the Plan adopted an amendment which created a two-tier benefit scheme for those participants who experience more than a 10-year break-in-service.  As amended, Section 6.01(c) of the Plan states that:

If a participant has more than one date that he ceased to be an Active Participant a different pension level may apply to each period of active participation in accordance with (b) above.  However, if the participant again becomes an Active Participant before he has 10 consecutive One-Year Breaks in Service and has at least 1,000 Hours of Service in each of two Calendar Years after returning to Covered Employment his previous pension level(s) will be disregarded and the pension level in effect when he again ceases to be an Active Participant will be applied to the Credited Service he earned during each period of his active participation.

The parties agree that, given the timing of the amendment, Ryan could not have taken steps to limit his break in service to less than 10 years in order to avoid the two-tiered benefit scheme.

When Ryan retired at age 60, he applied for benefits under the Plan, claiming benefits corresponding to his total 25 years of Credited Service.  The Trustees calculated Ryan's benefits under the two-tiered scheme set out in amended Section 6.03(c) because Ryan had experienced a 13-year break-in-service.  Under the two-tier benefit scheme, Ryan receives one level of benefits calculated at a rate of $8.50 per month for his first 14

years of Credited Service and another level of benefits calculated at $69.00 per month for his last 11 years of Credited Service. Consequently, Ryan receives a total monthly pension of approximately $855. Ryan appealed this decision, arguing that the higher rate of $69.00 per month should apply to all of his years of Credited Service. Accordingly, Ryan contends that he is entitled to a minimum monthly pension of $1,725 (in addition to other supplemental benefits recently provided to all retired plan participants). Citing amended Section 6.01(c), the defendants disagree.

## II. Procedural History

Ryan initiated this action on November 12, 1997, by filing a two count complaint with the United States District Court for the District of Delaware. The complaint alleged that Section 6.01(c) is an illegal rule insofar as it violates the Department of Labor's Rule of Parity, 29 C.F.R. 2530.210(g) (2001).

On November 6, 1998, defendants filed a motion to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and Ryan filed a cross-motion for summary judgment. After the parties briefed these motions, the District Court requested supplemental briefs addressing whether the application of the amended Section 6.01(c) retroactively decreased Ryan's accrued benefits in violation of ERISA 204(g)(1). See 29 U.S.C. 1054(g)(1). After considering the supplemental briefs and oral argument, the District Court denied defendants' motion to dismiss and granted Ryan's motion for summary judgment. See Ryan v. Asbestos Workers Union Local 42 Pension Fund, et al., 2000 WL 1800530 (D.Del. Apr. 4, 2000).

Having based its decision on the theory that the granting of a two-tiered pension for Ryan pursuant to the provisions of amended 6.01(c) violated ERISA 204(g)(1), the District Court granted Ryan leave to amend his complaint to include this theory of liability. Consequently, on April 18, 2000, Ryan filed an amended complaint, adding the 204(g)(1) theory of liability as "Count III."

On April 17, 2000, defendants filed a motion for reconsideration which the District Court denied. At the same time, the District Court entered an order declining to award counsel fees in favor of Ryan. Both the defendants and Ryan filed timely appeals.

## III. Jurisdiction and Standard of Review

The District Court had federal question jurisdiction over the instant case, as the action arose under ERISA. See 28 U.S.C. 1331. Because the District Court's judgment is final and disposes of all of the parties' claims, we have appellate jurisdiction pursuant to 28 U.S.C. 1291.

The District Court's grant of summary judgment for Ryan is subject to plenary review. See, e.g., Reform Party v. Allegheny County Dept. of Elections, 174 F.3d 305, 312 (3d Cir. 1999) (citing American Med. Imaging Corp. v. St. Paul Fire & Marine Ins. Co., 949 F.2d 690, 692 (3d Cir.1991)). In our review of the grant of summary judgment, we apply the same test that the District Court should have applied initially, viewing inferences from the evidence in the light most favorable to the non-moving party. See, e.g., Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977). We will affirm the District Court's grant of summary judgment if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

While ERISA 502(g)(1) clearly places an award of attorneys' fees within a district court's discretion, Third Circuit precedent makes our review more complex than an "abuse of discretion" review. Compare 29 U.S.C. 1132(g)(1) with Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983) and Anthuis v. Colt Industries Operating Corp., 971 F.2d 999, 1012 (3d Cir. 1992). As explained more fully below, a district court must articulate certain aspects of its reasoning in exercising or refusing to exercise its ERISA 502(g)(1) fee-setting discretion.

IV. Discussion

A. Grant of Summary Judgment in favor of Ryan

ERISA 204(g)(1) prohibits the retroactive reduction of "accrued benefits" by operation of a plan amendment. See 29 U.S.C. 1054(g)(1) (2001); see also Hoover v. Cumberland Maryland Area Teamsters Pension Fund, 756 F.2d 977, 984 (3d Cir. 1985) ("Section 204(g) of ERISA protects all accrued benefits from reduction by plan amendment, vested or not, and without regard to whether benefits are currently being paid to a participant who has already retired."). The parties agree that the Trustees'

amendment to and subsequent application of Section 6.01(c) of the Plan reduced Ryan's benefits. Consequently, the sole issue raised by defendants on appeal is whether Ryan's benefits are "accrued benefits" as defined in ERISA and protected by 204(g)(1).

Citing the clear language of the SPD, the District Court found that Ryan's benefits are accrued benefits. We agree with the District Court's conclusion. Section 3(23) of ERISA defines "accrued benefit" as "the individual's accrued benefit determined under the plan . . . expressed in the form of an annual benefit commencing at normal retirement age . . .." 29 U.S.C. 1002(23)(A). In Ryan's case, the term "normal retirement age" means the earlier of "the time [Ryan] attains normal retirement age under the [P]lan, or . . . the time [Ryan] attains age 65 . . . ." Id. at 1002(24). Ryan was younger than 65 when he started receiving his benefits. Therefore, his benefits are accrued benefits only if he began receiving them at an earlier "normal retirement age" set forth in the Plan.

The defendants contend that Ryan's benefits are in fact early retirement benefits and for that reason are not protected by 204(g). Defendants contend that the District Court erred by confusing retirement date with retirement age -- and since Ryan had not reached the retirement age of 65, his retirement was an early one.

We conclude, however, that Ryan did not take early retirement and that the District Court correctly determined that his accrued benefits were protected by 204(g).

The SPD language quoted above provides each participant with "[n]ormal retirement . . . at any earlier age that [he or she has] 25 years of Credited Service." The District Court, therefore, correctly found that the Plan set forth a normal retirement age at any age before 65 for participants who have earned 25 years Credited Service and correctly concluded that Ryan's benefits are accrued benefits.

This result is supported by our decision in Geib v. New York State Teamsters Conference Pension & Retirement Fund, 758 F.2d 973 (3d Cir. 1985). In Geib, we addressed the issue whether ERISA 203(a) protects pensioners from the suspension of benefit payments received before normal retirement age. See 758 F.2d at 976. Answering this question in the negative, we found that the plan at issue in Geib failed to

set forth a normal retirement age earlier than age 65 as permitted by ERISA 3(24). See id. at 976-77. The Geib court distinguished Nichols v. Board of Trustees of the Asbestos Workers Local 24 Pension Plan, 1 E.B.C. (BNA) 1868 (D.D.C. 1979), on which plaintiffs relied, noting that the language of the plan at issue in Nichols did set forth 25 years of credited service as a normal retirement age. See 758 F.2d at 976. The plan language in Nichols was substantively identical to the SPD language quoted above. It read:

An employee shall be eligible to receive a Normal Pension if he retires after:

a) he has been credited with twenty-five (25) years of credited service at any age, or b) he has attained the age of sixty-five (65) and has been credited with a minimum of five (5) years of credited service.

Nichols, 1 E.B.C. (BNA) at 1868. Geib's conclusion regarding the plan at issue in Nichols supports the conclusion that the Plan here sets an alternative normal retirement age at the time that a participant attains 25 years of Credited Service.

We note moreover that Ryan's retirement benefits have not been actuarially reduced to award to him at age 60 the present value of his age 65 benefits. If in fact his benefits had been considered by the Trustees to be early retirement benefits, they would have been so reduced.

Defendants contend nevertheless that the Trustees did not act arbitrarily and capriciously when they awarded benefits to Ryan under the two tier system. We have, however, determined as a matter of law that the two tier system does not apply under the undisputed facts of Ryan's situation. Under an arbitrary and capricious standard of review, we need not defer to the Trustees' decisions which are "without reason, unsupported by substantial evidence or erroneous as a matter of law." Courson v. Bert Bell NFL Player Retirement Plan, 214 F.3d 136 (3d Cir. 2000) (emphasis added). See also Skretvedt v. E.I. DuPont de Nemours and Co., 2001 WL 1185796 (3d Cir. 2001); Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40 (3d Cir. 1993).

We will therefore affirm the summary judgment in favor of Ryan.

B.   Denial of Attorney's Fees

In deciding whether to award attorney's fees pursuant to ERISA 502(g)(1), a

district court must consider the following five factors: (1) the offending parties'
culpability or bad faith; (2) the ability of the offending parties to satisfy an award of
attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending
parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the
relative merits of the parties' position. See Ursic v. Bethlehem Mines, 719 F.2d 670, 673
(3d Cir. 1983). See also McPherson v. Employees' Pension Plan of American Re-
Insurance Co., 33 F.3d 253 (3d Cir. 1994) (expounding the first, third and fifth Ursic
factors). Furthermore, "in each instance in which the district court exercises its fee-
setting discretion, it must articulate its considerations, its analysis, its reasons and its
conclusions touching on each of the five factors delineated in Ursic." Anthuis v. Colt
Industries Operating Corp., 971 F.2d 999, 1012 (3d Cir. 1992).

That the District Court failed to sufficiently set forth its analysis of the five Ursic
factors is plain from the face of its order accompanying Ryan II. In refusing to award
fees and costs, the District Court wrote only "[i]n its discretion, the court will decline to
award counsel fees in favor of the Plaintiff." Significantly, the District Court did not
mention any of the Ursic factors. Such a complete disregard of Ursic fails to satisfy our
requirements. See Anthuis, 971 F.2d at 1012 (holding the district court's recitation of
two of the five Ursic factors without analysis insufficient).

It would not be appropriate for this Court to analyze the Ursic factors and make a
determination regarding Ryan's request for attorneys' fees on appeal. As Judge Weis
stated in Ursic, "the discretion to set attorney's fees is allocated to the district courts and
not the courts of appeals. Even when a district court judgment is vacated by this court
and remanded for further proceedings . . . it is the district court, and not this court, which
possesses the authority to exercise fee setting discretion." Ursic, 719 F.2d at 674
(citations omitted). Accordingly, we will vacate the District Court's order denying
Ryan's request for attorneys' fees and remand this matter to the District Court for further
consideration of this issue.

TO THE CLERK:

    Please file the foregoing Opinion.


                 By the Court,


                 /s/ Jane R. Roth
                        Circuit Judge